UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────

JOEL O'HORA,

              Plaintiff,

        v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

              Defendant.

─────────────────────────────────────────

**REPORT AND
RECOMMENDATION**

12-CV-0052
(NAM/VEB)

## I. INTRODUCTION

In April of 2009, Plaintiff Joel O'Hora applied for Supplemental Security Income ("SSI") benefits and disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that he has been unable to work since September of 2004 due to various physical and psychological impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through his attorneys, the Olinsky Law Group, Brandon W. Sawyer, of counsel, commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On January 3, 2013, the Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 17).

---

[1]On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Acting Commissioner Colvin as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

On April 16, 2009, Plaintiff applied for SSI benefits and DIB under the Social Security Act, alleging that he had been unable to work since September 1, 2004. (T at 118, 122, 142, 159).[2] The applications were denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held in Syracuse, New York, on June 14, 2010, before ALJ John P. Ramos. (T at 33). Plaintiff appeared with an attorney and testified. (T at 38-61).

On August 31, 2010, the ALJ issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act and denying his claim for benefits. (T at 16-32). The ALJ's decision became the Commissioner's final decision on November 30, 2011, when the Social Security Administration Appeals Council denied Plaintiff's request for review. (T at 1-6).

Plaintiff, by and through counsel, commenced this action by filing a Complaint on January 11, 2012. (Docket No. 1). The Commissioner interposed an Answer on May 11, 2012. (Docket No. 9). Plaintiff filed a supporting Brief on June 25, 2012. (Docket No. 13). The Commissioner filed a Brief in opposition on September 28, 2012. (Docket No. 16).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

---

[2] Citations to "T" refer to the Administrative Transcript. (Docket No. 10).

[3] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

For the reasons below, it is recommended that Plaintiff's motion be denied, the Commissioner's motion be granted, and this case be dismissed.

## II. DISCUSSION

### A.  Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

The Commissioner has established a five-step sequential evaluation process to

determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

perform. <u>See</u> 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.     Analysis**

**1.     Commissioner's Decision**

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 1, 2004 (the alleged onset date) and met the insured status requirements of the Social Security Act through March 31, 2006 (the "date last insured"). (T at 21). The ALJ found that, as of the date last insured, Plaintiff had no medically determinable impairments. (T at 21). However, the ALJ concluded that, as of July 14, 2009, Plaintiff had the following impairments considered "severe" under the Social Security Regulations: degenerative disc disease in the lumbar spine, asthma, cirrhosis of the liver, depressive disorder, anxiety disorder, and alcohol dependence in reported remission. (T at 21-23).

The ALJ determined that Plaintiff's medically determinable impairments did not meet or equal one of the impairments listed in Appendix I of the Regulations (the "Listings"). (T at 23-24).

The ALJ concluded that Plaintiff retained the residual functional capacity to perform light work, as defined in 20 CFR § 404.1567 (b) and 416.967 (b), but was required to avoid concentrated exposure to fumes, dust, gases, and poor ventilation. (T at 24). The ALJ found that Plaintiff could understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with others; and handle reasonable levels of simple, repetitive work-related stress. (T at 24-

26).  The ALJ determined that Plaintiff could not perform his past relevant work as a factory laborer. (T at 26).

Considering Plaintiff's age (30 years old on the alleged onset date), education (high school), and work experience (unskilled), and residual functional capacity (light work, with limitations), the ALJ determined that Plaintiff was able to perform jobs that exist in significant numbers in the national economy.  (T at 27).  Accordingly, the ALJ concluded that Plaintiff had not been under a "disability," as that term is defined under the Act, from the alleged onset date (September 1, 2004) through the date of the ALJ's decision (August 31, 2010), and was therefore not entitled to benefits. (T at 27-28).

As noted above, the ALJ's decision became the Commissioner's final decision on November 30, 2011, when the Social Security Administration Appeals Council denied Plaintiff's request for review. (T at 1-6).

### 2.    Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed.  He offers four (4) principal arguments.  First, Plaintiff argues that the ALJ should have concluded that his wrist/hand numbness was a severe impairment.  Second, Plaintiff contends that the ALJ's RFC determination was not supported by substantial evidence.  Third, Plaintiff challenges the ALJ's credibility determination. Fourth, Plaintiff contends that the ALJ's step five determination was flawed.  Each argument will be addressed in turn.

### a.    Severity of Impairment

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental

ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

In this case, the ALJ concluded that, as of July 14, 2009, Plaintiff had the following impairments considered "severe" under the applicable Social Security Regulations: degenerative disc disease in the lumbar spine, asthma, cirrhosis of the liver, depressive disorder, anxiety disorder, and alcohol dependence in reported remission. (T at 21-22). Plaintiff also complained of numbness in his hand and wrists and attendant difficulty in

using these extremities. The ALJ referenced these complaints and indicated that he would consider the alleged functional (i.e. fine motor) limitations. However, the ALJ concluded that "there [was] not a separate severe impairment identified in the medical evidence to which [those] limitations [were] linked." (T at 23).

Plaintiff challenges the ALJ's finding, pointing to the following evidence: Dr. Phillip Lowe, a treating physician, diagnosed "neuropathy peripheral hereditary idiopathic," described the condition as stable, and indicated that it precluded Plaintiff from working. (T at 245). Plaintiff complained of wrist pain and numbness during office visits. Dr. Lowe noted forearm tenderness. (T at 234-38, 244, 248). Dr. Lowe described Plaintiff as "very limited" with regard to using his hands. (T at 309, 311).

Notwithstanding this evidence, this Court finds that the ALJ's consideration of Plaintiff's hand and wrist numbness was supported by substantial evidence. In March of 2008, Dr. Lowe referred Plaintiff for an electromyogram ("EMG") to determine whether Plaintiff was suffered from carpal tunnel syndrome or alcohol neuropathy. (T at 235). In an August 2008 treatment note, Dr. Lowe reported that Plaintiff had seen a neurologist, that an EMG had not been performed, that carpal tunnel syndrome was not indicated, and that the condition was improving. (T at 238). Although Dr. Lowe made a neuropathy diagnosis in an August 2008 treatment, subsequent treatment notes did not repeat this assessment. (T at 314, 316, 317, 319). When asked to list all of Plaintiff's medical conditions in forms completed in October of 2009 and March of 2010, Dr. Lowe made no reference to a separate neuropathy diagnosis. (T at 309, 311).

Moreover, Dr. Kalyani Ganesh, a consultative examiner, found that Plaintiff's fine motor skills appeared "quite intact." (T at 271). Her observation showed no deformity,

redness, tenderness, or swelling. (T at 271). Plaintiff was able to tie a bow, manipulate a button and zipper, and velcro, while being careful not to use his index finger. (T at 271). Dr. Ganesh reported that Plaintiff's "overall cooperation was rather poor." (T at 271). She found no gross physical limitation with respect to the use of upper extremities. (T at 271).

"Conflicts in evidence . . . are for the Commissioner to resolve." White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)). If there are conflicts in the medical evidence, it is the ALJ's decision that controls as factfinder. Id. Where, as here, the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Id.

In the alternative, even if the ALJ should have found that Plaintiff suffered from a separate neuropathy impairment, the error was harmless. The ALJ found other severe impairments and specifically considered Plaintiff's alleged fine motor limitations. Indeed, the ALJ determined that Plaintiff could not perform his past relevant work as a factory laborer, in part, because that work required fine motor activity inconsistent with Plaintiff's "apparent limitation in the use of his hands for fine manipulation." (T at 27). Thus, any error in finding that Plaintiff's fine motor limitations were not the result of a separate severe impairment was harmless. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987)("[T]he Secretary found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical

condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); McCartney v. Commissioner of Social Sec., Civil Action No. 07-1572, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009)("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments."); Portorreal v. Astrue, No. C.A. 07-296ML, 2008 WL 4681636, at *3 (D.R.I. Oct. 21, 2008).

**b. RFC**

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y.1990).

The ALJ concluded that Plaintiff retained the residual functional capacity to perform

light work, as defined in 20 CFR § 404.1567 (b) and 416.967 (b), but was required to avoid concentrated exposure to fumes, dust, gases, and poor ventilation. (T at 24).  The ALJ found that Plaintiff could understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with others; and handle reasonable levels of simple, repetitive work-related stress. (T at 24-26).

Plaintiff challenges the ALJ's RFC determination, pointing to two assessments provided by his treating physician, Dr. Lowe.  On October 5, 2009, Dr. Lowe completed a form entitled "Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination" (the "October 2009 report") (T at 309-312).  In that report, Dr. Lowe indicated that Plaintiff was moderately limited with respect to walking, standing, and sitting; and very limited as to lifting, carrying, pushing, pulling, bending, seeing, hearing, speaking, using his hands, and using stairs or other climbing. (T at 309-10).  Dr. Lowe assessed no limitations as to mental functioning. (T at 309).

On March 23, 2010, Dr. Lowe completed the same form again (the "March 2010 report")(T at 311-12).  He assessed moderate limitations as to walking, standing, and sitting; found Plaintiff very limited with respect to lifting, carrying, pushing, pulling, bending, using hands, and using stairs or other climbing; and found no limitation with regard to seeing, hearing, or seeing. (T at 311).  Dr. Lowe opined that Plaintiff was moderately limited with respect to understanding and remembering instructions, maintaining attention and concentration, and functioning in a work setting at a consistent pace. (T at 311).

Under the "treating physician's rule," the ALJ must give controlling weight to the

treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[5]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

The ALJ afforded no evidentiary weight to Dr. Lowe's October 2009 report, noting that the report lacked any detailed explanation of the cited limitations. (T at 25). In addition, the ALJ cited Dr. Lowe's indication that Plaintiff was very limited with regard to seeing, hearing, and speaking as evidence that the doctor was less than diligent in completing the form.[6] (T at 25). The ALJ gave "some weight" to Dr. Lowe's May 2010 report insofar as it assessed Plaintiff's physical limitations. (T at 26). However, the ALJ

---

[5]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

[6]The record contained no evidence of any visual, auditory, or speech impairment. Dr. Lowe's subsequent report (completed eight months later) indicated no limitations in this regard, which suggests that the October 2009 report of limitations was an error.

gave no weight to the mental limitations set forth in that report, as those limitations were not justified by any clinical diagnosis or findings. (T at 26).

This Court finds that the ALJ's evaluation of Dr. Lowe's reports was supported by substantial evidence and consistent with applicable law. First, Dr. Lowe's contemporaneous treatment notes were generally unremarkable and inconsistent with allegations of disabling pain. (T at 236 - reporting leg and wrist pain, but denying back pain, numbness, and swelling; Tinnel's sign negative)(T at 238 - "feels good"; "Reports leg pain improved, and bilateral wrist pain, but denies back pain, numbness and swelling"; Tinnel's sign negative)(T at 240 - "Pt states he has had problems with his back for almost 15 years but has ignored it")(T at 246 - "Denies back pain, leg pain, numbness and swelling").

Second, the ALJ's assessment was supported by an opinion from Dr. Thomas Sullivan, a treating orthopedic surgeon. Dr. Sullivan opined that Plaintiff had a "moderate partial disability," and should be limited from heavy lifting or prolonged sitting in one place without interruptions for stretching. (T at 254). He did not recommend any medications, but suggested that Plaintiff treating his back pain with "simple modalities such as ice and heat." (T at 254). In May of 2009, Dr. Sullivan completed an assessment form (the same form that Dr. Lowe completed twice), in which he opined that Plaintiff was moderately limited with respect to walking, standing, sitting, lifting, carrying, pushing, pulling, bending, and using stairs or other climbing, (T at 256). He found no evidence of mental functioning limitations. (T at 256). Dr. Sullivan indicated that Plaintiff was precluded from performing "heavy labor." (T at 257).

Third, Dr. Ganesh, the consultative examiner, found no gross physical limitation with respect to sitting, standing, and using upper extremities. (T at 271). She assessed mild-to-

moderate limitation with respect to walking and climbing, lifting, carrying, pushing, and pulling secondary to back pain and shortness of breath. (T at 271-72).

With regard to Plaintiff's mental functioning, Dr. Kristen Barry performed a psychiatric consultative evaluation in June of 2009. Dr. Barry opined that Plaintiff was able to follow and understand simple directions and instructions and maintain attention and concentration "fairly well." (T at 266). She found Plaintiff to be a "fairly intelligent individual." (T at 266).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

In addition, an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

In this case, the ALJ's RFC determination (including his consideration of Dr. Lowe's opinion) was supported by substantial evidence in the record, including (as outlined above) the contemporaneous treatment notes, Dr. Sullivan's opinion, and the assessments provided by Dr. Ganesh and Dr. Barry (the consultative examiners). Accordingly, this Court finds no reversible error with regard to this aspect of the ALJ's decision and recommends that it be sustained.

### c.    Credibility

Courts in the Second Circuit have determined a claimant's subjective complaints are an important element in disability claims, and they must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if a claimant's testimony of pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's

contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

> 1. [Plaintiff's] daily activities;
> 2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
> 3. Precipitating and aggravating factors;
> 4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
> 5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
> 6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
> 7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

16

In the present case, Plaintiff testified as follows: He cannot write due to hand and wrist pain. (T at 39-40). He stopped working due to back pain, which radiates down his legs and prevents him from standing and sitting. (T at 39-40). His hand and wrist pain limit his ability to grasp, hold, and manipulate objections. (T at 41). Plaintiff experiences constant swelling and pain in his extremities. (T at 41-42). He has asthma, which he treats with an inhaler. (T at 42). Plaintiff described himself as "[a]nxiety-ridden" and depressed. (T at 43). He has difficulty sleeping. (T at 44-45). He is not able to perform any housework. (T at 45-46). Plaintiff reported that he needs help showering and dressing. (T at 46). He cannot sit for more than 30 minutes or stand for more than 10 minutes. (T at 46-47). He is limited to lifting "minimal" weight. (T 47-48). He has difficulty maintaining attention and focus. (T at 48).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully credible. (T at 26).

This Court finds no reversible error with regard to the manner in which the ALJ weighed the evidence and assessed Plaintiff's credibility. As noted above, the consultative examiners provided assessments inconsistent with Plaintiff's allegations of disabling physical and psychiatric limitations. (T at 266, 271). Dr. Lowe's contemporaneous treatment notes were generally unremarkable and inconsistent with allegations of disabling pain. (T at 236, 238 , 240, 246). Dr. Sullivan did not recommend any medications and suggested that Plaintiff treat his back pain with "simple modalities such as ice and heat." (T at 254). He found moderate physical limitations and no evidence of mental functioning limitations. (T at 256). Dr. Sullivan indicated that Plaintiff was only precluded from

performing "heavy labor." (T at 257).

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs, 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F. Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

There is no question that Plaintiff lives with pain, as the record documents frequent complaints in that regard. However, "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment. Otherwise, eligibility for disability benefits would take on new meaning." Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983). Moreover, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence [of disability]." 42 U.S.C. § 423(d)(5)(A).

For the above-stated reasons, this Court finds that the ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750

F.2d 180, 196 (2d Cir.1984). The ALJ's credibility determination should therefore be upheld.

### d.    Step Five Analysis

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and

very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In this case, the ALJ noted that a finding of "not disabled" would be directed by Medical-Vocational Rule 202.20 if Plaintiff retained the RFC to perform the full range of light work. (T at 27). The ALJ noted Plaintiff's additional, non-exertional limitations (including, in particular, his limitations with respect to fine motor activity), but found that these limitations did not significant degrade the base of work requiring light exertion. (T at 37). Thus, the ALJ made a finding of "not disabled" under the framework of Rule 202.20. (T at 27).

The ALJ's conclusion was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Dr. Ganesh found that Plaintiff's fine motor skills appeared "quite intact." (T at 271). Her observation showed no deformity, redness, tenderness, or swelling. (T at 271). Plaintiff was able to tie a bow, manipulate a button and zipper, and velcro, while being careful not to use his index finger. (T at 271).

Dr. Ganesh found no gross physical limitation with respect to the use of upper extremities. (T at 271). Moreover, "many unskilled light jobs do not entail fine use of the fingers." SSR 83-14; see also Martone v. Apfel, 70 F. Supp. 2d 145, 154 (N.D.N.Y. 1999)("However, the regulations provide that many unskilled light jobs do not entail fine use of the fingers, but rather, only gross use of the hands. Thus, plaintiff's capabilities are consistent with the requirements of a full range of light work.")(citing SSR 83-14).

With regard to Plaintiff's mental abilities, Dr. Barry concluded that Plaintiff was able to follow and understand simple directions and instructions and maintain attention and concentration "fairly well." (T at 266). Dr. Sullivan noted no difficulties with regard to mental functioning. (T at 256). Accordingly, this Court finds no reversible error with respect to this aspect of the ALJ's decision.

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. The ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers and the consultative examiners and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. In sum, this Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the

pleadings be DENIED.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   March 12, 2013

Syracuse, New York


## V. ORDERS


Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE**

**DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**

Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

Dated:   March 12, 2013

          Syracuse, New York